McAdam on Landlord and Tenant [3d Ed.] p. 115), and, pushing the principle to the extreme, asks whether it could be possible that, if a tenant leasing premises for years, with rent payable yearly in advance, make default in the first payment, the landlord could on the 4th of the same month dispossess him under a warrant which by express command of the statute cancels a lease, and then recover in an action the entire year's rent in advance? So far as the criticism is based upon cancellation by the statute, I think that it overlooks the fact that, although the statute cancels the agreement and annuls the relation, yet by exception it assures affirmatively the very right to the landlord which is criticised. And so far as the criticism suggests hardship accentuated by the extreme example, that hardship comes from a default of the sufferer in his contract, of which the terms were presumably within his own control when he made it.

The judgment is affirmed, with costs. All concur.

---

(137 App. Div. 49.)

### MAERCKER v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. March 31, 1910.)

1. CARRIERS (§ 344*)—INJURIES TO PASSENGERS—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

A street car passenger, suing for injuries by being thrown from the running board of a car as it struck a curve in the track, must establish by a fair preponderance of the evidence his freedom from contributory negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1399; Dec. Dig. § 344.*]

2. CARRIERS (§ 331*)—INJURIES TO PASSENGERS—CONTRIBUTORY NEGLIGENCE.

Where the speed of a street car, running at 10 or 12 miles an hour as it struck a curve in the track, did not endanger the safety of passengers remaining in the seats provided for them, the act of a passenger in getting on the running board, when the car maintained that speed before and as it struck the curve, the existence of which he knew, was negligence as a matter of law, precluding a recovery for his injuries by being thrown from the car.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1379; Dec. Dig. § 331.*]

Hirschberg, P. J., dissenting.

Appeal from Trial Term, Kings County.

Action by Frederick Maercker against the Brooklyn Heights Railroad Company. From a judgment of dismissal at the close of the evidence of plaintiff, he appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and JENKS, BURR, WOODWARD, and CARR, JJ.

James C. Cropsey (Rufus O. Catlin, on the brief), for appellant.
D. A. Marsh, for respondent.

WOODWARD, J. This is an action to recover for personal injuries alleged to have been sustained through the negligence of the defendant. The plaintiff, a man of about 60 years of age, was a pas-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

senger upon the defendant's Grand Street car on the night of the 28th of August, 1905, en route to his home, 379 South First street, Brooklyn. He had been making this same trip almost nightly for a considerable length of time, and he testifies that the car had been stopped, on his signal, at the near crossing of Hooper street, where he alighted, during a period of about three years. There is a curve at Hooper street, beginning at the near side and continuing beyond the farther side of the street, and the plaintiff testified that, when about half a block from Hooper street, he attempted to attract the attention of the conductor for the purpose of signaling for the usual stop, but that he was at first unable to get recognition, but that he finally secured the attention of the conductor, and that the latter then rang the bell for the car to stop, but that the signal was given too late for the car, which was moving at the rate of 10 or 12 miles an hour, to stop before reaching the curve at Hooper street. The plaintiff says that the car did not slacken its speed perceptibly upon the ringing of the bell, and that with the car moving at the rate of 10 or 12 miles an hour he stepped down upon the running board of the open car on which he was riding and held on with his left hand, and that while standing in this position the car struck the curve on Hooper street with such violence that he was thrown from his position and sustained injuries for which he now seeks recovery. A witness called by the plaintiff corroborates the testimony of the plaintiff, and says that the car struck this curve with such violence that he was thrown over toward the side of the seat, and that another passenger was likewise disturbed.

There is no evidence that the car was run with a degree of negligence which endangered any person sitting upon the seats. So far as appears, those who remained in their seats upon the car were not injured, or seriously threatened with injury. The most that can fairly be inferred from the evidence is that the car was swayed with some degree of violence, such as is incidental to the striking of a curve by a car under full headway, but which did not throw any one from his seat, or endanger his safety; and, while it may be that there was a question for the consideration of the jury in reference to the negligence of the defendant, quite a different question is presented upon the duty of the plaintiff to establish by a fair preponderance of evidence that he was himself free from negligence contributing to the accident. There is absolutely no evidence in the case which would warrant a jury in finding that the plaintiff would have been injured if he had remained inside of the car. There is no evidence that the car was swayed sufficiently by striking the curve to have thrown any one out of the car, even if he had been standing up, as in the case of Whitaker v. Staten Island M. R. R. Co., 72 App. Div. 468, 76 N. Y. Supp. 548; nor is there any evidence to indicate that the motorman, as in the case last above cited, knew that the plaintiff had changed his situation upon the car. All the evidence shows is that the car was swayed, that the plaintiff's witness, as is often the case, was thrown against the side of the car, and that a third person was also somewhat disturbed; and while the witness testifies that he had often ridden with the plaintiff, and that he never experienced such a jerk at this

point, he does not say that it was different from what he had experienced generally in riding upon the surface cars, and his evidence is to be understood in connection with his own and the plaintiff's testimony that the car had usually stopped on plaintiff's signal at the near side of the street, so that it would not be under any considerable headway in taking this particular curve.

With these facts known to the plaintiff, realizing, as he says he did, that the signal had not been given in time to stop the car at the near side, and with the car moving at 10 or 12 miles an hour, and showing no diminution in speed, he stepped down from a place of safety onto the running board, facing the front of the car and holding on with his left hand, and while in this position the car struck the curve and he was thrown off. It may be that, if the motorman had seen him in this position while yet there was time to slacken the speed of the car before striking the curve, the original act of the plaintiff in getting upon the running board might not preclude him from recovering; but under the circumstances of this case, where there was no danger shown to one who remained upon the seats provided for the comfort and safety of passengers, no other conclusion is to be reasonably inferred than that the act of the plaintiff in getting upon the running board while the car was running at 10 or 12 miles an hour was a contributing and proximate cause of the injury which he sustained, and the learned court at Trial Term very properly granted defendant's motion for a nonsuit.

The judgment appealed from should be affirmed, with costs. All concur, except HIRSCHBERG, P. J., who dissents.